WICHITA SOUTHERN LIFE INS. CO. v. ROBERTS. (No. 554.)*

(Court of Civil Appeals of Texas. El Paso. May 4, 1916. Rehearing Denied May 25, 1916.)

1. INSURANCE ⊕⟞665(3)—ACTIONS—EVIDENCE —WAIVER.

In an action on life insurance policy, which was extended by notes for the premium until a short time before the death of insured, evidence *held* not to show an agreement to extend the payment of premium note and the policy insurance during the month in which insured died.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1711–1716; Dec. Dig. ⊕⟞665(3).]

2. INSURANCE ⊕⟞384—WAIVER—ACCEPTANCE OF NOTE FOR PREMIUM.

A letter of insurer to insured that a note would be accepted "as settlement of premium" did not alter the legal effect of provisions in note and policy that on nonpayment of note at maturity, the policy insurance would cease.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1019; Dec. Dig. ⊕⟞384.]

3. INSURANCE ⊕⟞384—WRITTEN WAIVER.

Formal notice that if a policy were in force on a day (its annual premium date), a certain premium amount would be payable, having written on the back that it was not a waiver of any default, sent out by a subordinate employé having no authority to extend time of payment of notes for premiums, did not waive right to forfeit the policy on nonpayment of note given for premium.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1019; Dec. Dig. ⊕⟞384.]

4. INSURANCE ⊕⟞365(2)—RIGHTS OF BENEFICIARY—INCORPORATING NEW CONDITIONS.

After a life policy has lapsed by its terms for nonpayment of premium, the act of insured in executing a note, containing a new forfeiture condition in order to obtain a reinstatement of the policy, is binding on the beneficiary.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 933; Dec. Dig. ⊕⟞365(2).]

Appeal from District Court, Haskell County; Jno. B. Thomas, Judge.

Action by Mary E. Roberts against the Wichita Southern Life Insurance Company. From a judgment for plaintiff, defendant appeals. Reversed, and judgment rendered for defendant.

Carrigan, Montgomery & Britain, of Wichita Falls, H. G. McConnell, of Haskell, and J. F. Woodson, of El Paso, for appellant. W. H. Murchison, of Haskell, and Theo. Mack, of Ft. Worth, for appellee.

HIGGINS, J. On October 14, 1912, appellant issued its policy of insurance No. 1147 upon the life of Percy P. Roberts in the sum of $2,500, payable to Mary E. Roberts, wife of the insured. The policy contains two provisions, which read:

"This policy is issued in consideration of the payment at or before its delivery of a premium of seventy-one dollars and 33 cents, for one year's term insurance beginning with the date below mentioned, and in consideration of the payment on or before the 14th day of each October, of a renewal premium of seventy-one dollars and 33 cents during the continuance in force of the policy. * * * Failure to pay any premium or any note given for any premium, in full, within the time allowed for such payment by the policy or the note, shall cause all insurance hereunder to cease and determine ipso facto and immediately, save as herein otherwise provided."

The insured defaulted in the payment of the premium which was due October 14, 1913. On December 12, 1913, the appellant wrote him a letter, which reads:

"Your premium in the sum of $71.33 was due October 14th, and the last day of grace in which to make payment of same expired November 14th.

"If you are not in position to make settlement in cash, we will accept your note for the greater part of this premium, together with a small cash payment.

"For that purpose, I inclose you herewith note in the sum of $60.00, dated October 14th, due April 14th, 1914, which if you will sign and return with your check for $11.33, will be accepted as settlement of your premium.

"Also sign the reinstatement blank inclosed, as the company requires each policy holder to give evidence of good health after the expiration of the grace period allowed in which to take care of the premium. Fill out this blank carefully, have your signature witnessed and return with the note and check.

"Trusting you will avail yourself of this opportunity to put your policy in force, I am,

"Yours truly,       E. P. Greenwood, "Vice Pres. and Gen'l Mngr."

The insured complied with the terms of this letter, and the policy was reinstated. The note which he signed and returned to appellant contains the following provisions, viz.:

"This note is given on account of the premium due October 14th, 1913, on said company's policy No. 1447, insuring my life; and if it shall not be paid in full at its maturity, all insurance under said policy shall cease and determine ipso facto and immediately, save as therein otherwise provided. In such event this note shall cease to be binding except for the amount of the premium unpaid and earned at the date of default, together with interest thereon; but for that amount and interest it shall remain a valid obligation."

The insured was unable to pay this note at its maturity, whereupon appellant accepted a renewal note signed by the insured in sum of $60, dated April 14, 1914, due Septem-

ber 1, 1914. In all other particulars this note was the same as the note dated October 14th. Default was made in the payment of this note. The insured died September 10, 1914. This suit is by Mrs. Roberts to recover upon the policy. The company defended upon the ground that the policy of insurance had lapsed by reason of the failure to pay the premium due October 14, 1913, and the notes subsequently accepted in settlement thereof, basing its position upon the terms quoted in the policy and notes. The case was tried before a jury, to whom this issue was submitted:

"Did Percy P. Roberts receive a letter from the Wichita Southern Life Insurance Company, signed by some officer of said Company authorized to grant extensions on premium notes, to the effect that he would be granted an extension until October 1, 1914, in which to pay the premium note due said Wichita Life Insurance Company September 1, 1914?"

—which issue was answered in the affirmative. Judgment in appellee's favor was thereupon rendered.

Error is assigned to the refusal of a peremptory instruction to find for defendant, and the assignment is sustained.

As is indicated by the issue submitted, it was contended by the plaintiff that appellant had agreed with the insured to extend the payment of the note last given by him to October 1, 1914, which agreement was evidenced by a letter from the company received prior to his death. All of the evidence bearing upon this issue is here quoted. Mr. W. H. Murchison, plaintiff's attorney, testified:

"In the latter part of August, 1914, Mr. P. P. Roberts came to my office with this letter (letter of August 22, 1914, from the company) for the purpose of borrowing the amount due on his note. I was not in position to loan it to him. At any rate, at his request·in my office, upon my letter head, I wrote a letter to the Wichita Southern Life Insurance Company, stating therein, in substance, that he was not at that time, and would not be, able to pay the note at its maturity; that he was on a deal for the exchange of Mr. Hallmark's land in Haskell county for a livery stable property, at Corsicana, I believe, and that he had every assurance that the deal would be closed, and that if they would agree to extend the note to October 1st, he would be in a position to pay the note. I wrote the letter on my typewriter, and he signed it in my office. I furnished him an envelope, and he left there with it. Of course, I could tell you what he told me afterwards, but I understand they object to it."

The letter of August 22, 1914, mentioned by Mr. Murchison, was from appellant's secretary, A. B. Huff, was addressed to the insured, and reads:

"Your note for $60.00 and interest amounting to $1.25, which note was given in settlement of renewal premium on your policy No. 1447, will be due September 1, 1914, without grace. Your policy will lapse on that date if this note is not taken care of, and we trust that you will give this matter your prompt attention."

Mrs. Roberts, the beneficiary, testified:

"My name is Mary E. Roberts. I am the plaintiff in this case. P. P. Roberts was my husband. He was residing here in Haskell county at the time of his death, where I am residing now. My husband was 44 years old at the time of his death. Yes; I did read a letter addressed to my husband from the Wichita Southern Life Insurance Company in regard to extending the time of payment of a note until October 1st. That was about the last of August or the first of September, 1914. Well, I remember that it (the letter) said they would extend the payment until the 1st of October. Yes; I saw the letter myself. I read it. My husband gave the letter to me to read. I didn't notice who signed it, particularly; I just remember the heading of the letter. It was from the Wichita Southern Life Insurance Company. I don't know what became of that letter; I looked for it, but I have not been able to find it. He put it back in his pocket, and of course, I supposed he brought it back and put it in his desk at the office. Seems to me like Mr. Roberts and I talked about it, discussed it, but I do not remember just what."

Cross-examination:

"I did not notice whose name was signed to the letter, particularly. I just noticed the head of the letter. Yes; I just noticed the letter head of the Wichita Southern. That's all I know. I don't know in particular who signed it. Yes; I think it was signed, but I do not remember about it, just how. I do not remember just the date it was, either the last of August or the first of September, somewhere along there. I don't know whether anybody ever did see that letter or not. The last I knew of it, my husband put it back in his pocket. Yes; my husband had an office here in town. Yes; he kept all of his papers in his office, in his desk. My son had the key to the desk after his death. I believe my son had the key. Yes, sir; he most usually kept it locked. I do not know that anybody else ever saw that letter. No; I can't quote the words of the letter. No; I cannot quote the substance of what was set out in it; I just remember that we were talking about it, and that they would extend to the 1st of October, the payment. Yes, sir; it seems to me that there was something in the letter said about if he would give a note, they would extent it; if he would give a new note and make a new application, they would extend it. Well, I know that they said they would extend it to the 1st of October. I don't remember about the— No; I do not remember all of the letter at all. All I remember about this letter is that I got the impression, and it is my recollection it said something about they would extend it to the 1st of October. No; I cannot give the date of the letter any nearer than the last of August or the 1st of September."

[1] It is quite apparent that Mrs. Robert's testimony is insufficient to show with any degree of certainty that the company made any definite agreement to extend the payment of the note to October 1, 1914. Viewing it in its most favorable aspect, it shows no more than a conditional offer to extend if a new note was given, and no pretense is made that there was a compliance with such condition. The only officers of the company authorized to grant extensions were Greenwood, its vice president and general manager, and Huff, the secretary. Both of these parties testified that the letter which Murchison wrote for Roberts was never received by the company and that they had never written any such letter to Roberts as was testified to by Mrs. Roberts. The appellee, however, asserts that Greenwood and Huff were interested witnesses, and the jury therefore authorized to disbelieve their testimony rela-

tive to the letters. This is quite true. But the jury's disbelief of the testimony of Greenwood and Huff does not supply the want of some affirmative evidence of such an agreement. The burden rested upon appellee of proving such an agreement, and unless some affirmative evidence thereof was offered, no issue in respect thereto arose.

In passing upon this phase of the case, it may be further remarked that it is to be gravely doubted whether Mrs. Roberts' testimony is sufficient to show that the letter concerning which she testified was signed by any officer of the company authorized to agree to an extension. But it is not necessary for us to base our decision upon the insufficiency of her testimony in this respect, and for the purpose of this decision it may be assumed that the letter was signed by a duly authorized representative of the company.

[2] It is also insisted by appellee that the letter of December 12, 1913, stated that the check for $11.33 and the note dated October 14, 1913, due April 14, 1914, would be accepted "as settlement of your premium," and that therefore the check and note were accepted by the company in full settlement of the premium, which fell due October 14, 1913. It is true that the same was so accepted, but such acceptance did not alter the legal effect of the provisions in the policy and note that, if the note was not paid at maturity, all insurance under the policy would immediately cease and determine ipso facto.

[3] It is further insisted that the evidence is sufficient to show a waiver by the company of the forfeiture of the policy by reason of the nonpayment of premium which became due October 14, 1913. Undoubtedly the original right of forfeiture was waived by the acceptance of the note dated October 14, 1913, and the reinstatement of the policy. And the right of forfeiture accruing upon April 14, 1914, when default was made in the payment of said note, was waived by the acceptance of the note, which matured September 1, 1914. So upon the issue of waiver we must inquire whether there was a waiver of the right of forfeiture which accrued upon September 1, 1914, when the last accepted note matured. Upon this issue reliance is placed upon a notice from the appellant mailed and addressed to the insured, which reads:

"If policy No. 1447 shall be then in force, $71.33 for annual premium will be due October 14, 1914, and may be paid in accordance with the terms of said policy and notice indorsed on back hereof to the company's duly authorized Collector.          A. B. Huff, Secretary."

Upon the back of this note is the following:

"The sending of this notice is not a waiver of any default or ground of forfeiture now existing, or a precedent for the future. It is merely a business courtesy extended for this one time.

"The policy stipulates that payment of the premium may be made at any time within one calendar month after the date indicated by this notice subject to an interest charge at the rate of five per cent. and that if not made within the

time so allowed, the insurance will cease and determine ipso facto and immediately save as may be otherwise provided by this policy. No agent has power to waive these conditions, and they will be strictly enforced."

In view of the language of this notice, it would seem clear that it alone is insufficient upon which to predicate a waiver. But if there be any doubt in this respect, it is resolved when the circumstances attending the mailing of the notice are considered. Walter Wilson, an employé of the company, testified:

"My name is Walter Wilson; live at Wichita Falls, Tex.; am at present in the employ of the Wichita Southern Life Insurance Company, and have been for 3 years and a little over. During 1914, my duties with the insurance company were first as stenographer and as renewal man; that is, I make out the notices and write the letters. The custom of the company is to send out to every person who appears to have a policy in the company a notice of the maturity date of their premium—about 30 days before such date, or maturity, falls due. We send out those notices twice a month. I make out the notices that are sent out, and did so in 1914. I make out those notices from our card index. These notices are sent out each month on the 10th and the 25th. The notices sent out on the 10th of the month cover all maturities between the 1st and the 15th, inclusive, of the following month. Those sent out on the 25th of the month cover all those falling due from the 16th to the 31st of the following month, inclusive. This notice that has been introduced in evidence here, that is the form we use. I made out this particular notice, but I did not send it out. These notices that are to be mailed out on the 10th of September, like this one was, were made out shortly after the 1st of September, on the 1st or shortly thereafter. I made this notice in question out some time about the 1st of September, 1914. After I made out this notice, and all others to be sent out on the 10th of September, I left it at the office there to be mailed out on the 10th of the month. I just left these notices there, and whoever was taking the mail in my absence took those notices down and mailed them on the 10th of September. I was not there at the time this notice was mailed, as I had gone off on a vacation. I left for my vacation on the 4th day of September, 1914. So this notice was made out before the 4th of September. No, sir; I had no other, or exercised no other authority with the company, and had no authority to extend the time of the payment of notes that were due the company. * * * I made this notice out some time between the 1st of September, 1914, and noon of the 4th, for I left on my vacation on the noon Denver on the 4th. It was mailed after I left. Yes, sir; that is Mr. Huff's printed signature that appears on this notice. He is the secretary of the Wichita Southern Life Insurance Company. Yes; I made this notice out from the card index. Mr. Huff and the bookkeeper are supposed to keep the card index. Mr. J. A. Griffin is the bookkeeper. I have nothing to do with keeping the books of the company. Yes, sir; the company keeps a policy register, but I do not have anything to do with it. The particular card that has on it the record of Percy Roberts' policy is in our files at Wichita; it was not brought down here with us, that I know of. Yes, sir; I consulted that card index between the 1st and the 4th of September, 1914, and from that I made out this notice. Yes; I was authorized to do that; that is my duty. I was authorized by Mr. Huff to do that. I make out the notices from the cards each month."

Surely the waiver of a valuable right cannot be predicated upon a premium notice sent out under such circumstances. The du-

ties of Wilson were in no wise executive, and waivers by a corporation of substantial contract rights can be made only by its authorized representatives.

There is nothing in Insurance Company v. Ellis, 105 Tex. 526, 147 S. W. 1152, 152 S. W. 625, to support the view that any waiver has been shown here. The distinguishing characteristics of that case are so apparent that it would be a matter of supererogation to undertake to point them out.

[4] We regard as without merit the further contention that the interest of Mrs. Roberts under the policy was such that the insured could not affect the same by the giving of notes to cover the premium containing the forfeiture conditions which were contained therein. As to this, it is sufficient to say that the policy lapsed when default was made in the payment of the premium due October 14, 1913, and the company might lawfully impose, as a condition of its reinstatement, the giving of a note containing the clause of forfeiture which appears in the note.

We have carefully considered the numerous propositions urged by appellees' able counsel in support of the judgment rendered in her favor, and regard them as being all without merit. The facts have been fully developed, and it is our duty to finally dispose of the case. The peremptory instruction in favor of appellant should have been given.

Accordingly, the cause will be reversed, and judgment here rendered for appellant; and it is so ordered.