## GRAND UNITED ORDER OF ODD FELLOWS v. JONES.

### No. 11250.

Court of Civil Appeals of Texas. Dallas. May 27, 1933.

Rehearing Denied July 8, 1933.

Nabrit, Atkins & Wesley, of Houston, for appellant.

W. J. Durham, of Sherman, for appellee.

BOND, Justice.

On January 30, 1929, the Grand United Order of Odd Fellows, a fraternal benefit society, issued to Charles G. Jones a policy of life insurance, entitling him to participate in its beneficiary fund to the amount of $500, payable at death to his wife, Cora Jones.

The pertinent provisions of the policy are: (1) That it was issued and accepted subject to all of the conditions therein, and subject to all of the laws, rules, and regulations of the fraternity then in force, or that may thereafter be enacted, and be null and void if said insured did not comply with all of the conditions, laws, rules, and regulations of the Endowment Department of the Grand Order of Odd Fellows; (2) that the member see that his assessments and dues were all paid to the local secretary or worthy recorder of the order, on or before the first of each month, to be remitted to the endowment secretary; (3) that if the admission fee, dues, and beneficiary fund assessments levied against the person named in the policy were not paid, as required by the laws of the order, the policy to become null and void, and continue so until payments are made in accordance therewith; and (4) that neither the Grand Lodge nor local lodge be in any way liable on the policy, if the assessments or dues were not paid. The foregoing provisions are expressly made a part of the consideration for, and are conditions precedent to, the payment of benefits under the policy.

The pertinent provisions of the laws, rules, and regulations of the fraternity and its Endowment Department, at the time of the issuance and acceptance of the policy, and which were in full force at the time of the death of Charles G. Jones, are these:

"Sec. 1. Each member must pay before the 15th day of every month into the Treasury of the Lodge or Household of which he or she is a member, the following Endowment dues, according to the maximum amount stated in his or her Endowment certificate * * *

"Sec. 5. Any member failing to pay the dues, and assessments provided for, under the foregoing sections, shall thereby be automatically suspended and this department shall not be liable for any benefits under the certificate should a member die during such suspension;

"Sec. 6. A member who is suspended for non-payment of dues and assessments required to be paid under this article may be reinstated to full membership by paying all arrears, provided such dues and assessments are in arrears not more than six months. If such suspended member is in arrears in the payment of such dues and assessments for a period longer than six months, he or she shall thereby forfeit his or her membership. Persons who have thus lost their membership may again be accepted by complying with all the requirements imposed upon new applications for membership in this Department."

The record shows that insured failed to pay the dues and assessments provided for under the terms of the policy, for a period of more than eleven months next preceding his application for renomination as a member of the society, thus the policy automatically lapsed, and he thereby forfeited his membership in the fraternity. After the expiration of such arrearage, to wit, on May 16, 1930, insured addressed to the Endowment Department of the order an application for reinstatement as a member of the society, complying with all of the requirements imposed upon new applications for membership. The application contained the following pertinent provisions: (1) " * * * if the applicant is accepted, an insurance policy will be issued, based upon examination," and (2) "I (insured) hereby agree to pay all assessments, dues and other obligations to the Order for which I may become liable while a member thereof, as required by the constitution and by-laws, and I further agree that liability of the Endowment or burial department for the payment of benefits shall not begin until after I have been favorably passed upon by the Grand Medical Examiner of the Order, shall have been accepted, duly initiated by and obligated in the local Lodge herein named; and a policy issued and delivered to me, while in good health, by the Endowment Department until all other requirements of the constitution and by-laws of the Order relating to the new members have been complied with. I further agree to forfeit any claim against the said Order, in case any of the foregoing statements are proven false."

In addition to the covenants quoted, the application embodies a family history of applicant, pertinent answers to questions relative to his age, health, occupation, etc., and designates a beneficiary for a new policy, and in every way follows the form in compliance with requirements imposed upon new applications for membership. The application was delivered to the secretary or worthy recorder of the local lodge, to be transmitted to the endowment secretary.

On May 16, July 22, and December 6, 1930, in compliance with the terms of the applica-

tion, Charles G. Jones paid to the local secretary the assessments chargeable to an insured of the age of 41 years, which were remitted to the endowment secretary in accordance with the rules and regulations of the society. The Endowment Department declined to issue the policy, because of the erroneous statement of applicant as to his age. His first policy placed his age at 44, which carries a higher rate of insurance than the age of 41.

On this appeal, appellant's contention is that appellee cannot recover on the policy of insurance because the policy had lapsed, due to Jones' nonpayment of dues and assessments for more than six months, and that he was not reinstated in the order, and could not be reinstated except as a new member, and which was not complete at the time of his death.

Appellee's contention is that, notwithstanding the delinquency of insured in the payment of dues and assessments required under the policy, the insurer is liable under the doctrine of waiver or estoppel, in this, the local secretary accepted his dues and the local lodge recognized his reinstatement as a member, with knowledge of such forfeiture.

The terms of the policy, laws, rules, and regulations of the order quoted expressly provide that insured had the privilege of reinstating himself by the payment of all arrearage of dues and assessments, provided he exercised that privilege within the six months period of delinquency; this he failed to do, but suffered his membership to be forfeited, and his policy of insurance to lapse; he permitted such delinquency to extend beyond the time granted him to reinstate himself in the society, and was thus put to the task of applying for renewed membership and a new policy.

■ Because of insured's failure to pay his dues, the forfeiture of the policy and membership in the order became complete and absolute. He could not be reinstated except by an effective waiver of the forfeiture. For such waiver to exist, the insurer must have knowledge of the facts constituting the forfeiture, and unequivocally recognize the continuance of the policy.

In the case of The Prætorians v. Krusz, 58 S.W.(2d) 27, 29, the Supreme Court stated the pivot upon which such cases must turn, i. e., whether the character of the acceptance of the dues was unconditional or otherwise, thusly: "Authorities holding that acceptance of premiums, after delinquency in their due payment, is either a waiver or an estoppel or operates as a new contract of insurance, are unanimous in the holding that such acceptance must be unconditional. * * * It is only where the acceptance is unqualified or unconditional, that it can be said, as a matter of law, there is an effective waiver."

In the case at bar, the insurer knew of the forfeiture, by the failure of insured to pay his dues for a period of more than eleven months; but it cannot be said that, by acceptance of the dues, the order unequivocally continued the policy in force, or that the facts disclose an issue of waiver of the forfeiture. The widow of insured, over appellant's objection, testified in substance that Douglas, the local secretary or worthy recorder, in her presence told her husband that, if he would pay $3, he would become reinstated, that the policy of insurance would stand just as it was before it was forfeited, that he would again become a financial member, that there would be no more required of him, and that her husband paid two other quarterly payments under like circumstances. If the local secretary or worthy recorder had authority to waive provisions of the policy, the constitution, and by-laws of the Grand Lodge, then the testimony might raise an issue of waiver. The record fails to show any competent and sufficient proof of authority conferred upon the local secretary to act for the Grand Lodge, with reference to a reinstatement of the forfeited policy, or to waive the provisions of the constitution and by-laws, to which insured had subscribed when he became a member. In order to reinstate his membership and become a financial beneficiary in the endowment fund of the society, he subscribed to the covenant that, "He shall be accepted by complying with all of the requirements imposed upon new applications for membership in this Department." The "new application for membership," to which insured subscribed, provides that a new policy shall be issued and delivered before the insurer shall become liable, and under these circumstances the local secretary accepted the dues.

■ ■ The insured's application for affiliation as a new member in the order, and remittance of the dues incident thereto, were transmitted to the Grand Lodge, and accepted on the accompanying application. The dues thus transmitted do not disclose an unequivocal waiver of the forfeiture. The unconditional acceptance of dues would, in effect, create a new contract, thereby restoring the rights, obligations, and liabilities of the original contract to the insured. However, appellee's payments were not received unconditionally, but only upon the agreement that insured should be examined, tested, and accepted as a new member, and a new policy of insurance delivered, before liability would attach. We do not interpret the acceptance of the dues by the local secretary, and insured's recognition as a member by members of the local lodge, under the circumstances disclosed by the record, as an unequivocal waiver of the forfeiture. One with whose acts and knowledge the alleged principal is sought to be charged must have been his agent

and acting within the scope, or apparent scope, of his agency. "One cannot rely on the agent's knowledge being imputed to the principal if the express terms of the contract between principal and third party exclude the rule of vicarious knowledge, and if a contract expressly provides that notice to the agent shall be ineffective to bind the principal, then there can be no implication of the binding character of such a communication." 2 Tex. Jur. 571.

So, in effect, is the contract in the case at bar. The local lodge officers were employed by the Grand Lodge in a purely ministerial capacity; their connection with the initiation of the Grand Lodge's liabilities involved no discretion or authority. The local secretary accepted the application and dues and transmitted them to the Grand Lodge, which he was directed to do, and on account of which a new policy would issue.

Thus, a new policy would create obligations and liabilities on appellant, independent of Jones' past affiliation, and the application to which he subscribed, and the dues and assessments paid thereunder, might be sufficient to impute to appellant liabilities based on facts of negligence proximately related to its acceptance of the dues and its failure to issue the policy.

We conclude that there was no such waiver on the part of the society, and that appellee is not entitled to recover on the policy. This cause is reversed and judgment rendered in favor of appellant.

Reversed and rendered.