**In re MEINKE, PETERSON & DAMER, P.C., A Texas Corporation, Debtor.**

**Bankruptcy No. 384–30013–F–11.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Nov. 2, 1984.

William T. Burke, Jr., Burke & Associates, and Joe Matthews, Matthews & Thorp, Dallas, Tex., for debtor.

Dierdre B. Ruckman, Diane G. Hoover, Charles B. Lee, Jr., Gardere & Wynne, Dallas, Tex., for Blue Cross and Blue Shield of Texas.

## MEMORANDUM OPINION

JOHN C. FORD, Bankruptcy Judge.

This case came for hearing before this Court on April 10, 1984. The Debtor, Meinke, Peterson and Damer, P.C., sought to hold the Defendant, Blue Cross of Texas and Blue Shield of Texas, in contempt for violation of the automatic stay provisions of Section 362(a)(3) in terminating the Debtor's health and dental insurance policy. This Court requested that the parties submit briefs on the pending issues in this case before rendering its decision.

### FACTS

In September, 1983, Debtor, Meinke, Peterson and Damer, P.C. (hereinafter "Meinke"), a law firm incorporated under the laws of Texas, entered into an agreement with the Defendant, Blue Cross of Texas and Blue Shield of Texas (hereinafter "Blue Cross") to renew its Experience Rated Group Comprehensive Blue Cross and Blue Shield Contract Number 25737 (hereinafter the "Policy"). This Policy was for insurance on Meinke's employees for hospitalization, medical and dental coverage. The renewal of the Policy was for a period of one year, beginning November 15, 1983 and ending November 15, 1984. Premium payments on the Policy were scheduled at $1500.00 per month and due on the fifteenth day of each month.

The Policy provided a thirty-one day grace period from the due date for payment to be made without penalty. Article III, Paragraph E of the Policy also provided for the termination of the insurance contract for failure to pay the premium within the grace period.

Meinke failed to pay the monthly premium of $1500.00 due on November 15, 1983 and on December 15, 1983. The Debtor law firm was experiencing serious financial problems, due to the departure of one of its partners, which caused them to become unable to make payments on the Policy. Meinke's financial situation worsened and the law firm filed its voluntary petition under Chapter 11 of the Bankruptcy Code on January 5, 1984.

A representative of the Debtor, Marlin G. Peterson, met with a representative of Blue Cross, Dorenda Marder, on January 6, 1984 to discuss the past due premiums of November 15, 1983 and December 15, 1983 and the premium due for January 15, 1984. There is a factual dispute as to what was agreed to by the representatives of Meinke and Blue Cross which gave rise to the Debtor's motion for contempt. Meinke tendered a $1000.00 payment on the Policy. There is a dispute as to whether this money was to be applied to the past due November and December 1983 premiums or whether it was to be credited to the January 15, 1984 premium. The parties also disagree whether the Policy was renewed by the tender of the $1000.00.

Meinke was to contact Blue Cross on January 9, 1984 as to the remaining sum due on the past due premiums. It failed to do so and, on January 11, 1984, Dorenda Marder of Blue Cross contacted Marlin G. Peterson of Meinke concerning their meeting of January 6, 1984. On January 12, 1984, Blue Cross sent a letter notifying Meinke that it was canceling the Policy for non-payment of the premiums effective November 15, 1983. Blue Cross also returned the $1000.00 payment tendered by Meinke by this letter. Meinke filed its Motion for Contempt against Blue Cross on March 16, 1984 for cancellation of the Policy. A Show Cause Order was issued by this Court on March 16, 1984 ordering Blue Cross to show cause on April 10, 1984 why it should not be held in contempt for violation of the automatic stay provisions of Section 362 of the Bankruptcy Code.

Three issues are before the Court concerning the insurance policy. The first issue that must be resolved is whether the Policy, Experience Rated Group Comprehensive Blue Cross and Blue Shield Contract Number 25737, extinguished by its own provisions expressed in the body of the contract. The second issue is if the Policy did terminate by its own terms whether Blue Cross by its conduct waived the forfeiture provision of the Policy. And third, whether Blue Cross by its conduct violated the stay provisions of Section 362 of the Bankruptcy Code.

The Court is of the opinion that the Policy extinguished by its own terms and that the Defendant, Blue Cross, did not waive the forfeiture provisions of the Policy. The automatic stay provision of Section 362(a)(3) of the Bankruptcy Code was not violated by the Defendant, Blue Cross. The Debtor's Motion for Contempt is without cause and, therefore, is denied.

## CONCLUSIONS OF LAW

The automatic stay provision of Section 362 of the Bankruptcy Code becomes effective the date the bankruptcy petition is filed either in a voluntary, involuntary or joint cause of action. COLLIER ON BANKRUPTCY, Volume 2, ¶ 362.11 (15th Ed.1984). Actions taken against the debtor and/or the debtor's estate are subject to potential sanctions. 28 U.S.C. § 1481 empowers the bankruptcy court to hold in civil contempt those who violate the automatic stay provisions. *In re Wariner,* 16 B.R. 216, 218 (Bankr.N.D.Tex.1981); *In re Waters,* 22 B.R. 387 (Bankr.N.D.Tex. 1982) and COLLIER ON BANKRUPTCY, Volume 2, ¶ 362.11 (15th Ed.1984). This statute provides, in pertinent part, that "a bankruptcy court shall have the powers of a court of equity, law and admiralty ...". 28 U.S.C. § 1481 (1984). Without excep-

tion, the bankruptcy court is vested with essentially all powers relating to civil remedies. *In re Brothers Coal Co., Inc.*, 6 B.R. 567, 571 (Bankr.Va.1980).

■■■ The imposition of civil contempt is warranted in those cases where the violation of the automatic stay provision is willful. A violation of the automatic stay of Section 362 may be willful even if it occurred on the advice of counsel. COLLIER ON BANKRUPTCY, Volume 2, ¶ 362.11 (15th Ed.1984); *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47 (2nd Cir.1976); cert. denied, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977). A willful violation of the automatic stay provision is committed when the contemnor acts with knowledge of the filing of the bankruptcy petition. The courts have imposed civil contempt where creditors have repossessed the debtor's automobile, filed garnishment proceedings, continued eviction proceedings and refused to comply with court orders. See *In re Carter*, 691 F.2d 390 (8th Cir.1982); *In re Sandmar Corp.*, 12 B.R. 910 (Bankr.N.M. 1981); *In re Wariner*, 16 B.R. 216 (Bankr.N.D.Tex. 1981); *Matter of Batla*, 12 B.R. 397 (Bankr.Ga.1981); and *In re Martin-Trigona*, 16 B.R. 792 (Bankr.Conn.1982).

The Debtor, Meinke, asserts that the Defendant, Blue Cross, should be held in civil contempt for violating the stay provision of Section 362(a)(3) of the Bankruptcy Code. This section stays any act to obtain possession of property of the estate or property from the estate. Meinke claims that the Policy was in force after the January 5, 1984 filing date of the Debtor's petition. Therefore, it argues that the Policy remained property of the estate. Meinke believes that the cancellation of the Policy by Blue Cross is clearly a taking of its property in violation of the stay of Section 362(a)(3).

■■■ The stay provision of Section 362(a)(3) is operative here only if the Policy is property of the Meinke estate. Section 362(a)(3) does not bar actions where neither a property interest, nor a possessory interest is present, COLLIER ON BANKRUPT-CY, Volume 2, ¶ 362.04[3] (15th Ed.1984); *Matter of Balcones Oil Co., Inc.*, 21 B.R. 36 (Bankr.W.D.Texas 1981). It is the opinion of this Court that the Policy expired by its own terms in November 1983 prior to Meinke filing its bankruptcy petition on January 5, 1984. Meinke cannot avail itself of the automatic stay protection offered by Section 362(a)(3) of the Bankruptcy Code.

■■■ The law in Texas is clear that insurance policies are contracts governed by the same rules as contracts. *First Texas Prudential Insurance Company v. Ryan*, 125 Tex. 377, 82 S.W.2d 635, 637 (1935); *Wood v. American Security Life Insurance Co.*, 304 S.W.2d 559 (Tex.Civ. App.1957); *Fruhman . v. Nawcas Benevolent Auxiliary*, 436 S.W.2d 912 (Tex.Civ. App.1969), ref. n.r.e.; *McBroome-Bennett Plumbing, Inc. v. Villa France, Inc.*, 515 S.W.2d 32 (Tex.Civ.App.1974), ref. n.r.e. Where there is no ambiguity, the function of the court is to construe the contract and enforce it as made by the parties. 14 TEX. JUR. 3rd, Contracts § 184 (1981). This Court cannot find any ambiguous or uncertain terms in the Policy, Experience Rated Group Comprehensive Blue Cross and Blue Shield Contract Number 25737. The Policy, in particular Article III, Paragraphs A and E, expressly state the requirements for the continuance of coverage. Blue Cross was obligated to continue coverage of Meinke's employees as long as Meinke met its obligation of paying the premiums under the Policy.

The parties contracted to renew the Policy for medical, dental and hospitalization insurance coverage in September, 1983. Under the terms of the Policy, Meinke was obligated to make a premium payment on the fifteenth day of each month, beginning on November 15, 1983, in the amount of $1500.00. Meinke failed to make the first premium payment due on November 15, 1983 and the second premium payment due on December 15, 1983. By the terms of Article III, Paragraph E, Meinke had a thirty day grace period from each premium due date to meet its obligation. The grace period for the November 15, 1983 premium

payment ended on December 17, 1983. Meinke also failed to pay its premium obligation on this date. The Policy expressly provides in Article III, Paragraph E, that "if any premium is not paid within the grace period, *this contract shall terminate at the end of such grace period ...*". The Policy terminated by its own terms on December 17, 1983, the last day of the grace period for the November 15, 1983 premium.

Meinke argues that the Defendant, Blue Cross, waived the forfeiture provisions of Article III, Paragraph E, by its actions on January 6, 1984. On this date, Blue Cross received one thousand dollars from Meinke for the $1500.00 premium due on November 15, 1983. Blue Cross's Receipt Number 731 to Meinke, dated January 6, 1984, clearly shows that the one thousand dollar payment was to be applied to the $1500.00 premium due November 15, 1983. The Receipt Number 731 does not indicate any other fact except for this one. Meinke argues that Blue Cross waived the automatic termination provisions of Article III, Paragraph E, by the receipt of the one thousand dollars in conjunction with other acts by the Defendant. These additional acts comprise of billings sent to Meinke for premium due from November 15, 1983 and the processing of Meinke employee claims by Blue Cross after the Policy's termination.

■ There are several well settled rules of insurance law. One of these principles concerns the waiver by an insurer of the forfeiture of an insurance policy by the insured. A waiver by Blue Cross of the forfeiture of the Policy requires the occurrence of three factors. First, Blue Cross must have had knowledge of the facts which constituted the forfeiture of the Policy. Second, the forfeiture of the Policy by Meinke must have been complete and absolute. And thirdly, there must have been some unequivocal act by Blue Cross which recognized the continuance of the Policy, or which was wholly inconsistent with the forfeiture. *Bankers Life and Loan Association of Dallas v. Ashford*, 139 S.W.2d 858, 860 (Tex.Civ.App.1940); *New York Underwriters Insurance Company v. Brittain*, 62 S.W.2d 168 (Tex.Civ.App.1933) writ dismissed, and *Equitable Life Assurance Society v. Ellis*, 105 Tex. 526, 147 S.W. 1152, 105 Tex. 526, 152 S.W. 625 (1912).

■ From the facts before this Court, it is undisputed that Blue Cross had knowledge of facts constituting a forfeiture of the Policy by Meinke. Blue Cross was aware that Meinke had failed to pay the November 15, 1983 and December 15, 1983 premiums. There was no record of payment of these premiums by Meinke in either month. The forefeiture of the Policy by Meinke was complete and absolute since it failed to cure the nonpayment of the November 15, 1983 premium by December 17, 1983. *Bankers Life and Loan Association of Dallas v. Ashford*, 139 S.W.2d 858, 860 (Tex.Civ.App.1940). Meinke failed to take any steps prior to the end of December 17, 1983 to indicate that it was not forfeiting the policy. Instead, Meinke waited for more than two months to contact Blue Cross about salvaging an already forfeited policy.

■ Blue Cross had no obligation under the provisions of the Policy and Texas law to declare it forfeited by Meinke. In Texas, forfeiture provisions for nonpayment of insurance premiums when due are for the benefit of the insurer. An insurer need not do any act to declare a policy forfeiture, but it may do some act that will waive it. *Equitable Life Assurance Society v. Ellis*, 105 Tex. 526, 147 S.W. 1152, 105 Tex. 526, 152 S.W. 625 (1912); *United Fidelity Life Insurance Company v. Murph*, 94 S.W.2d 809 (Tex.Civ.App.1936), writ dismissed. Blue Cross had no contractual obligation to notify Meinke of the Policy forfeiture. Meinke cannot claim that it had no notice of this and of the terms constituting a forfeiture. The Debtor here is a law firm. It is not an ordinary citizen purchasing health and dental insurance for himself and his family. As a group of lawyers, Meinke has the expertise available to read, digest and understand the provisions of the Policy more so than the ordinary citizen. Even an ordinary citizen could understand the meaning of Article III, Paragraph E. This provision clearly and specifically gave no-

tice to Meinke that the Policy would be forfeited for nonpayment of the premiums at the end of the grace period.

It is the Court's opinion that Blue Cross did not act in any way which recognized the continuance of the Policy or which was wholly inconsistent with the forfeiture. The monthly billings Blue Cross sent to Meinke in November 1983, December 1983 and January 1984 were in the course of ordinary business. Blue Cross had not received the premiums due and was sending statements to Meinke as any insurance company would to an insured who owed premiums under a policy. The same is true for the claims filed by Meinke employees after the expiration of the Policy. Photocopies of these claims were provided to the Court and they show that none were paid by Blue Cross. The claims on their face show that the benefit plan paid none of the charges because they "were incurred after (the) benefit plan cancelled". These actions do not show an intention on the part of Blue Cross to treat the Policy as valid and binding. This is especially true in the case of the one thousand dollars Blue Cross received on January 6, 1984 from Meinke. These funds were conditionally accepted by Blue Cross until January 9, 1984 when Meinke was to pay the remainder due on the November 15, 1983 and December 15, 1983 premiums. This conditional acceptance is clearly reflected by the fact that the one thousand dollars were placed in a suspense account, and then were returned to Meinke on January 12, 1984 when it failed to pay the remainder. A conditional acceptance such as this does not have the effect of waiving the lapsing of the policy and its forfeiture. *Summers v. Jefferson Standard Life Ins. Co.*, 142 S.W.2d 589, 591 (Tex.Civ.App.1940), writ refused; *The Praetorians v. Krusz*, 58 S.W.2d 27 (Tex.Comm.App.1933); *Grand United Order v. Jones*, 62 S.W.2d 239 (Tex. Civ.App.1933), writ dismissed.

Meinke argues that it relied on these actions and it was led to believe by Blue Cross that the Policy continued in effect. The Debtor argues the Blue Cross is estopped from claiming otherwise. It is the Court's opinion that Blue Cross indicated to Meinke that it had until January 11, 1984 to pay the past due premiums in full and, if that occurred, the Policy would continue. Meinke could only rely on that specific condition. Since Meinke failed to meet this condition, it could not expect to enjoy coverage under the Policy indefinitely until it could pay these past due premiums.

Meinke's Motion for Civil Contempt is without cause and, therefore, must fail.