**GREAT SOUTHERN LIFE INS. CO. v. MAJORS.**

**No. 2748.**

Court of Civil Appeals of Texas. Beaumont.
May 10, 1935.

Rehearing Denied May 15, 1935.

Vinson, Elkins, Sweeton & Weems, of Houston, for appellant.

Davis, Avery & Wallace, of Center, for appellee.

WALKER, Chief Justice.

On the 22d day of February, 1928, Southern Union Life Insurance Company issued to Shelby V. Majors a life insurance policy in the sum of $1,000; subsequently appellee, Mrs. Callie Majors, the wife of the insured, was named beneficiary, and appellant, Great Southern Life Insurance Company, assumed all liabilities under this policy. Shelby V. Majors paid in cash the first premium, and the second premium maturing February 22, 1929. When the third premium matured, on the 22d day of February, 1930, he did not pay that premium in cash but executed therefor the following note:

"$24.52 No. 44434 February 22, 1930.

"On the 22nd day of October, 1930, without grace, I promise to pay to the order of the Southern Union Life Insurance Company at its office in Fort Worth, Texas, the sum of Twenty-four and 52/100 Dollars with interest at the rate of six per cent, per annum from date until paid, for value received.

"This note is tendered by the maker upon the understanding that it shall not be binding until accepted by the President or Secretary of said company.

"That although the annual premium due on the 22nd day of February 1930, on Policy No. 44434 has not been paid, the insurance thereunder shall be continued in force until due date of this note;

"That if this note is paid on or before the date it becomes due, and there is no other indebtedness on account of the premium, such payment will then be accepted by the Company as payment of said premium: That if this note is not paid on or before the day it becomes due, all rights to extended or paid-up insurance shall be for the term and amount secured by said policy on and from the day when said premium became due; but, nevertheless, the maker of this note shall be liable to the Company for a sum equal to one-half of the principal of this note, said sum to be due as the earned premium to the maturity of this note (or at the pleasure of the Company said sum, with interest, at six per cent, may be treated as an indebtedness on account of the policy to reduce any of its benefits in accordance with the terms of the policy) and the payment to or collection by said Company of said sum shall not revive said policy or any of its provisions. Address Joaquin Texas, R. 2 Signature Shelby Majors."

No payment of any sum on principal or interest was ever made on this note and no payment was ever tendered, and there was no evidence that payment was ever demanded. The premiums, maturing on the policy on February 22, 1931, February 22, 1932, and February 22, 1933, were not paid in whole nor in part, and no tender of payment was ever made, and there was no evidence that payment was ever demanded. One-half of the amount due on the note was charged by appellant against the cash value of the policy, as provided for in the policy, but there is no evidence as to when this charge was made. Shelby V. Majors and Callie Ann Majors were married February 7, 1929, and lived together continuously as husband and wife until his death on December 30, 1933. The foregoing statement is taken from the agreed statement of facts, from which we quote as follows:

"The death of Shelby V. Majors was caused by disease and not by having engaged in aeronautics or from any other exception contained in the policy. * * *

"If the premiums had been paid on said policy to and including October 30, 1933, the total cash value of the policy would have been $74.45. If the company advanced a loan against the policy to pay the annual premium due on February 22, 1931, the annual premium due on February 22, 1932, and the premium which would cover the period from February 22, 1933, to October 30, 1933, and charged 6 per cent. interest in advance on each premium loaned, the total amount of such loan on October 30, 1933, would be $74.47. * * *

"Yearly term insurance is the only form of insurance wherein the net value of the benefits for a particular year is equal to the premium charged for that year. All other forms carry a premium in which is included the reserve in addition to the cost of the insurance. * * *

"If the premium due February 22, 1930, on said policy had been paid in cash, there would have been sufficient cash value to give the insured the right to obtain extended term insurance in the amount of $1,000, for the period covering three years and five months from February 22, 1931, as provided in the policy.

"If the first three annual premiums were paid on the policy and if the insurer was entitled to deduct from the cash value the principal and interest due at maturity on the note of Shelby V. Majors, which is set out in this agreement, the cash value would have given the insured the right to obtain extended term insurance in the amount of $1,000, less the amount of such indebtedness, for the period covering one month from February 22, 1931, as provided in the policy.

"If all rights of the insured to extended term insurance were for the term and amount secured by the policy on and from the date when the third annual premium became due, the insured had the right to obtain extended term insurance for the period covering one year and two months from February 22, 1930.

"If the premiums had been paid on said policy to and including October 22, 1930, the cash value would have been $21.33 and would have given the insured the right to obtain extended term insurance in the amount of $1,000, less any indebtedness against the policy, for the period covering two years and eight months from October 22, 1930, as provided in the policy. * * *

"The insured did not exercise his option to have the policy indorsed as extended term insurance as provided in said policy. * * *

"Great Southern Life Insurance Company denied liability on said policy more than thirty days before the institution of this

suit and after plaintiff had made demand for payment of the face amount thereof. * * *

"A reasonable attorney's fee for the attorney for plaintiff is $225.00."

We quote as follows from the insurance policy, which was made a part of the agreed statement of facts:

"If there is no indebtedness against the policy, the cash value and the amount of the paid-up life policy are shown in the table above, and the extended term insurance shall be for the face amount of the policy and will be continued in force for the period set out in the table. If there be any indebtedness, the cash value shall be reduced thereby, the paid-up insurance shall be reduced in the proportion that such indebtedness bears to the cash value, and the extended term insurance shall be for the face amount of the policy less such indebtedness and will be continued for the period that the net cash surrender value as herein defined will purchase at net single premium term rates. If the sum thus available to purchase extended term insurance be more than sufficient to purchase extended insurance to the end of the policy year nearest the Insured's attained age of eighty-five years, the excess shall be used to purchase paid-up pure endowment payable at the end of the endowment period.

"* * * 1. Conditions Regarding Payment of Premiums.—All premiums are payable in advance at the Home Office of the Company at Fort Worth, Texas, or to an authorized agent of the Company upon delivery of a receipt signed by the President or Secretary and countersigned by the authorized agent. Premiums may be paid annually, semi-annually or quarterly, but should the Insured not survive to complete premium payments for the current policy year, the amount necessary for such completion shall be considered an indebtedness hereon to the Company.

"The Annual Premium is $24.52, Semi-Annual Premium is $12.75, Quarterly Premium is $6.50.

"If any premium or any premium note is not paid on the date when due the policy shall be null and void from such due date and the insurance hereunder cease except as otherwise provided herein.

"* * * Indebtedness.—Any indebtedness to the Company will be deducted in any settlement of this policy or of any benefit hereunder.

"* * * 14. Incontestability, Occupation, Travel.—This policy is unrestricted as to travel, residence and occupation and is incontestable, except for fraud and the restrictions herein relating to aeronautics, after it has been in force for one year and after the second annual premium shall have become due and shall have been paid, provided subsequent premiums have been duly paid when due. In the event of the death of the Insured resulting from having engaged in any form of aeronautics the Company's liability shall be limited to the reserve under the policy."

The suit was filed by appellee against appellant to recover the amount of the policy, reasonable attorney's fees, and 12 per cent. damages. No point is before us on the sufficiency of the petition; we copy therefrom as follows:

"That the annual premiums of $24.52 which were due on February 22, 1928, February 22, 1929, and February 22, 1930, were timely paid by the said Shelby V. Majors, to the said Southern Union Life Insurance Company, and that under the provisions of law applicable to such policy, and under both the expressed and implied terms and provisions of the same, the said Shelby V. Majors became entitled to and there was secured to him, upon his defaulting in payment of the premium due February 22, 1931, a stipulated form of insurance, the net value of which should be equal to the reserve under said policy less a sum of not more than 2½ per cent. of the insurance, that is, said Shelby V. Majors was entitled to term insurance for a period of three years and five months from said February 22, 1931, not having paid any premiums accruing under the terms of said policy after the 22nd day of February, 1930, and such extended term insurance was in full force and effect in the sum of $1,000.00 at the time of the death of Shelby V. Majors on the 30th day of December, 1933."

Defendant answered by general demurrer, general denial, and further to the effect "that the plaintiff should not recover herein because the said policy sued upon in accordance with its terms lapsed and terminated prior to the insured's death." Appellant answered further pleading the facts of the payment of the premiums, as given above; pleading the premium note in haec verba. Neither party pleaded any issue of waiver or estoppel. The case was tried to the court without a jury, with judgment for appellee against appellant for $1,000,

the principal sum of the policy, 12 per cent. damages in the sum of $120, and $225, the agreed amount of "reasonable attorney's fees." From the judgment, the appeal has been regularly prosecuted to this court.

## Opinion

■ It is our conclusion that the trial court was in error in holding that the policy was in force as term insurance at the time of the death of Shelby V. Majors. That was the controlling issue in the case. To sustain the judgment of the trial court, the note must be treated as cash and the proceeds of the note must be charged into the cash value and reserve of the policy. Appellee gives the note that construction and then advances the proposition that there was no authority given appellant either by the policy or by the note to charge the unpaid note against the cash value and reserve of the policy which, on her argument, as stated, included the amount of the note.

In support of her proposition appellant cites Amicable Life Ins. Co. v. White (Tex. Civ. App.) 38 S.W.(2d) 860; Pacific Mutual Life Insurance Co. of California v. Thurman (Tex. Civ. App.) 55 S.W.(2d) 1079 (writ of error granted); Texas Life Ins. Co. v. Cork (Tex. Civ. App.) 59 S.W. (2d) 334 (writ of error granted). The facts of the cited cases are not in point on the issue before us. Thus, in the White Case the first two annual premiums due January 5, 1926, and January 5, 1927, were paid in cash. The third premium due June 5, 1928, was not paid in cash, but settled by a note which was not paid on maturity. The insured died October 20, 1929. Under the terms of the policy, the payment of the first two premiums entitled the insured to extended term insurance for 2 years and 140 days from June 5, 1928, which carried the policy beyond the death of the insured. So it affirmatively appears from the facts that to keep the policy alive it was not necessary that the amount of the note be charged into the cash value and reserve of the policy. In the Thurman Case the payment of the first two premiums in cash was sufficient to carry the policy beyond the death of the insured. In the Cork Case the trial court did not hold that the note given for a deferred premium constituted payment, but that, in view of a particular provision of the note, it was payment of one-half of the premium.

In the case at bar, in order to extend the insurance, it is necessary for the entire amount of the note to be treated as a cash payment; and to charge into the policy one-half of the note, as was done in the Cork Case, would not sustain appellee's judgment. So, the provision of the note before us making Shelby V. Majors liable for "one-half of the principal of this note" becomes immaterial except in ascertaining the intent of the parties. If, in accepting the note, it was the intent of both the insurance company and the insured that it should be treated as a cash payment, then no one would deny the proposition that it should be given that construction; if the acceptance of the note is subject to that construction, then we would agree with appellee's contention that no authority was given by either the policy of insurance or the note to charge the unpaid principal against the cash value and reserve on the policy. On that construction, the note would be a chose in action in the hands of appellant, subject to the solvency of Shelby V. Majors.

We come to the inquiry, What was the intent of the parties on the issue before us in the execution and delivery of the note? First, What is the language of the contract on the issue of intent? The note provides that if "not paid on or before the day it becomes due, all rights of extended or paid-up insurance shall be for the term and amount secured by said policy on and from the day when said premium became due." The plain import of that language limited the amount of "extended" insurance to the cash and reserve value of the policy on the maturity date of the third premium; by the terms of the agreement the policy, as thus extended, expired before the death of Shelby V. Majors. This language cannot be subject to the construction that the parties intended the note to be construed as a cash payment. Again, on default in payment, the liability of the insured was limited by the express language of the note to "one-half the principal." How can it be argued that the insurer received the note as cash for the full amount of the premium when collection of the note could be enforced only to the extent of 50 per cent. of the principal sum? The policy itself provided that "if any premium or premium note is not paid on the date when due the policy shall be null and void from such due date and the insurance hereunder ceases except as otherwise provided herein." The provisions of the policy thus referred to limit the "extended"

insurance to the cash value and reserve of the policy due on the maturity date of the unpaid premium or the unpaid note. Clearly there is no provision in the written contract subject to the construction that the parties intended the note to be accepted in lieu of cash.

The second inquiry relates to the doctrine of our courts on this issue. In Underwood v. Security Life & Annuity Co. of America, 108 Tex. 381, 194 S. W. 585, 588, our Supreme Court, discussing a premium note, said: "We think the note given represents the premium, and takes its place in the contract." In Southland Life Ins. Co. v. Hopkins, 244 S. W. 989, 990, the Supreme Court, speaking through its Commission of Appeals, said: "The note represented the premium and took its place in the contract of insurance"; citing the Underwood Case. Timmerman v. Bankers' Reserve Life Co., 122 Tex. 603, 63 S.W. (2d) 687, cites in its support the Hopkins Case. Discussing the equities of the parties when the insured fails to pay a premium note, the Supreme Court said in the Underwood Case: "It seems inequitable for her to rely upon the note to prevent a forfeiture of the policy for a failure to pay a premium, and at the same time to repudiate the provisions of the note relating to forfeiture, when they are substantially the same provisions provided in the policy itself." In the Underwood Case, quoting from the Supreme Court, "the policy provided that a failure to pay any premium due would render it null and void"; in the policy before us is found the provision that the failure to pay any premium, or premium note, when due, rendered the policy "null and void from such due date." As we construe these opinions by the Supreme Court it is the settled law of this state that a premium note represents the premium and that the failure to pay the premium note, nothing to the contrary appearing in the note or the policy of insurance, has the same effect as the failure to pay the premium itself. The failure to pay the third premium limited the cash value and reserve of the policy to the amount due on that date, which was not sufficient to keep the policy in force up to the date of the death of the insured.

The judgment of the lower court should be reversed and judgment here rendered for appellant, and it is accordingly so ordered.