**UNITED FIDELITY LIFE INS. CO. v. MURPH et al.**

No. 2897.

Court of Civil Appeals of Texas. Beaumont.

May 25, 1936.

Rehearing Denied June 3, 1936.

Richardson & Lanier, of Jasper, and Thompson, Knight, Baker & Harris, of Dallas, for appellant.

Garland Smith, of Jasper, for appellees.

COMBS, Justice.

Appellees were plaintiffs and appellant defendant in the trial court, and we will so designate the parties. Roy Dunaway Murph, Jr., and Mary Alice Murph, minors, brought this suit by next friend in the district court of Jasper county, to recover upon a policy of life insurance issued by the defendant to their father, Roy Dunaway Murph, deceased, for the principal sum of $5,000, and in which policy they were named as beneficiaries. The policy was in the face amount of $5,000, but was subject to certain deductions for loans and premiums which reduced the principal sum to $4,595.67. Plaintiffs sued for that amount with interest from the date due, and for attorney's fee in the amount of $750. The defendant defended on the ground that the policy lapsed prior to the death of the insured. The plaintiffs contended by their pleadings that the policy had not lapsed, first, because the cash reserve of the policy was sufficient to contin-

ue it in force under the automatic extended insurance provision of the policy, and, second, that defendant, by the writing of the letter hereinafter referred to, had waived any forfeiture which might otherwise have been applicable.

Murph had borrowed $250 against the policy, and we think it clearly established by the evidence that there was not enough cash reserve remaining in the policy to extend the insurance beyond the date of Murph's death, unless a premium note, which had been given by Murph but not paid, could be counted as a cash payment in determining the cash reserve of the policy. On the matter of waiver the controlling facts appear without dispute as follows:

The policy was issued to Murph in 1927 in consideration of an annual premium of $138.05, the annual premium being payable on September 1st of each year. All premiums were paid up to and including premium due September 1, 1931. The payment of that premium kept the policy in force until September 1, 1932. Murph, being unable to pay the 1932 premium, executed in lieu thereof a premium note as follows:

"On or before the 1st day of March, 1933, without grace, for value received, I promise to pay to the order of the United Fidelity Life Insurance Company, at its office in the City of Dallas, Texas, the sum of One Hundred and Thirty-eight and 05/100 ($138.05) Dollars with interest thereon at the rate of 6% per annum from September 1, 1932, until paid.

"This note with $—— no cash payment is given to extend the time for the payment of premium due September 1, 1932, under Policy No. 24448, issued by said Company upon the life of Roy Dunaway Murph, and the insurance under said policy is hereby continued until midnight of the due date of this note. If this note is paid on or before its maturity such payment, together with said cash payment (if any), will be accepted by the company as payment of said premium. If this note or any installment thereon is not paid at maturity, said policy shall be void, subject to the provisions thereof, in which event the cash payment, together with the interest on the note and an amount by which the pro rata premium from the date of the note to its maturity exceeds the cash payment, shall be considered earned by the company, and this note shall be a valid obligation for the part of such indebtedness which cannot be liquidated by the non-forfeiture value which may be available under said policy."

A few days before the note came due, the insurance company extended it by letter mailed to Mr. Murph, reading as follows:

"United Fidelity Life Insurance
Company
"Dallas, Texas
"Feb. 23, 1933

"Mr. Roy D. Murph,
"Jasper, Texas.

"Dear Mr. Murph:
"Policy No. 24448

"Complying with your request we are extending the premium note under your policy of the above number to mature September 1, 1933. We trust you will be in a position to care for same at that time.

"Yours very truly,
"HMD:LBR        Assistant Secretary."

About fifteen days prior to September 1, 1933, the company gave notice to Murph reminding him that the extension note was payable on September 1, 1933, and seven days before the due date another notice was sent. These notices were not placed in evidence, but the fact that they were given was testified to by the secretary of the company. The note was not paid when it came due. Mr. Murph was taken ill and died twelve days later, September 12, 1933. In the meantime, on September 9, 1933, the insurance company wrote the insured the letter which is relied upon by the plaintiffs as constituting the waiver. The letter was as follows:

"United Fidelity Life Insurance Company
"Dallas, Texas
"September 9, 1933.

Policy No. 24448
Amount of Note   $138.05
Interest             8.28
                 _____
                  $146.33

"Due Date September 1, 1933.

"Mr. Roy D. Murph
"Jasper, Texas

"Dear Mr. Murph:
"We have not yet received remittance to cover your renewal premium note as shown above, and hasten to advise you for fear the matter has been overlooked. Unless your check is already in the mail, kindly forward

same promptly in order to keep your policy clear of any indebtedness.

"If it is not convenient to pay the full amount of the note at this time, kindly advise if you can pay a part and desire an extension on the balance, or if you are not able to pay any part of it, let us know what time is needed.

"Under the laws and regulations governing life insurance companies, it is necessary to have a specific maturity date on all premiums and notes, which accounts for our urging you to give this matter your prompt attention.

"Yours very truly, H. M. Drew
"HMD :lh          Assistant Secretary."

At the time the letter was ·received in Jasper, Mr. Murph was in an unconscious condition and never .saw it.

After the evidence was in, both sides moved for an instructed verdict. The trial court overruled the defendant's motion and granted the plaintiffs' motion, and pursuant to the instructed verdict entered judgment for the plaintiffs for the principal amount sued for, plus interest, penalties, and an attorney's fee of $750.

■ Appellees' contention that the unpaid premium note can be counted as cash payment in determining the cash reserve of the policy is overruled. Great Southern Life Ins. Co. v. Majors (Tex.Civ.App.) 82 S.W.(2d) 760 (writ refused). The testimony of the defendant's actuary showed that, without counting the note as cash payment, the cash reserve of the policy was only sufficient to keep the policy in force to August 27, 1933, under the automatic extended insurance provisions. Therefore, appellees' contention that the policy was in force at the time of the death of the insured by reason of the automatic premium loan provision of the policy is overruled.

■ The controlling question, therefore, is whether or not the defendant waived the lapsing of the policy which otherwise would have occurred as of September 1, 1933, because of the failure of the insured to pay the premium note.

The policy contained a provision allowing a grace period of one month after due date for the payment of all premiums after the first. It, therefore, cannot be questioned that, had the premium been regularly paid in cash when due, September 1, 1932, such premium would have kept the policy in force until one month after September 1, 1933, by reason of the grace provision. And since the death of the insured occurred on September 12, 1933, within such grace period, the policy would have been in force at the time of his death. The question then is: Did the introduction of the letter dated September 9, 1933, written by the defendant to the deceased, taken in connection with the other facts and circumstances in evidence, establish that the defendant intended to waive, and did waive, the lapsing of the policy and elect .to treat it as still being in force, as it would have been had the premium been paid in cash or the note paid when due? It is our conclusion that it did. The premium note which is set out above contained the stipulation that in the event of forfeiture of the policy for nonpayment of the note, "this note shall be a' valid obligation for the part of such indebtedness which cannot be liquidated by the non-forfeiture value which may be available under said policy." It is unquestionably the law that when the note was not paid on September 1st the company might have treated the policy as lapsed and have called on the insured for payment of the balance due on the note and interest, after deducting the cash value of the policy. ι The insured would have owed very little because, as above stated, the cash value of the policy was sufficient to pay the insurance for all but ·four days of the period for which the note was given. But it was conclusively shown by the letter that the defendant offered to· extend the time of the payment of the note for· whatever time the insured desired "in order to keep your policy clear of indebtedness." In doing so it elected to hold the note in lieu of the payment of the premium, and such being the case, the policy was kept alive under the grace provision as effectively as it would have been had the note been paid.

In reaching this conclusion· we do not overlook the rule contended for by the appellant, many times announced by our courts, to the effect that mere demand by an insurance company for payment of a past due premium note does not, of itself, constitute a waiver of forfeiture of a policy which had theretofore occurred. See Jefferson Standard Insurance Company v. Hicks (Tex.Civ.App.) 264 S.W. 1033, and cases cited. The note, by its terms, being an obligation of insured for which he was liable, regardless of whether or not the policy remained in force, the mere effort to collect the note would not, of itself, evidence an intent to waive the forfeiture for failure to pay the note when due. Such demand would in no way be inconsistent with

the intent of the insurer to treat the policy as lapsed. But the facts of those cases clearly distinguish them from the case before us. Here the letter written by the defendant was not a mere demand for payment of the obligation which would have been due by the terms of the note if the policy was lapsed. It was a request for payment of all of the note, and an offer to extend the time of payment of the note, as it had once before done. These facts are wholly inconsistent with any other reasonable conclusion than that the insurance company meant to waive the forfeiture. Under the very terms of the note, it could not hold it in lieu of premium payment and for its face amount if the note was past-due and the policy lapsed.

The facts of this case bring it squarely within the principle of waiver announced by our Supreme Court in Equitable Life Assurance Society v. Ellis, 105 Tex. 526, 147 S.W. 1152, 1156, 152 S.W. 625. In that case the waiver was based upon the letter written by the company after the policy was lapsed, offering to accept the assured's note secured by the policy for the renewal premium. Chief Justice Phillips, in discussing the doctrine of waiver, said:

"The law plainly is that, when a policy of insurance provides the premium shall be paid on or before a stipulated day or the policy shall become forfeited and void, time becomes of the very essence of the contract, and a failure to so pay the premium determines it, but concurrent with this principle is always the qualification that this is so unless there be a waiver or estoppel. We fully subscribe to the doctrine that in such cases the forfeiture occurs ipso facto, and no act of the company need be done either to declare it or enforce it. But of equal force and dignity is the further fundamental principle that a provision for forfeiture for nonpayment of premiums when due is for the benefit of the insurer and may be waived by it. No act need be done to declare the forfeiture, but some act may be done that will waive it, is the comprehensive rule wherein both principles are blended and harmonized so that rights shall be preserved and hardship may be averted. The law is not unmindful that the nature of men is, such that not always do they stand unyielding and relentless in the assertion of their rights. It will not hesitate to enforce them, even in hard cases and in the face of a harsh consequence, but it never discourages a generous impulse or imposes a restraint upon magnanimous conduct. Those chap-

ters in the ancient annals of the law that are marked with the rigor and severity of a strict application of the doctrine of forfeitures are not the proudest in our history, and have inspired no tribute from the enlightened thought of a more tolerant time. And it is not to be wondered that in the humane progress of the law the doctrine of waiver, as applied to forfeitures, soon grew up and has become established as a fundamental principle. While it is a maxim that forfeitures are odious, the law is not eager to relieve against them; it takes no initiative; and in itself presents no remedy against the contract the parties have themselves made. But it is not, and should not be, slow to give effect to conduct reasonably indicative of an intention to forego the advantage of a forfeiture and relinquish its result.

"Hence the holding that it will seize upon slight circumstances as evidence of such intention, and the further settled rule that in our opinion controls this case that a waiver of the forfeiture of a policy of insurance will result, in the absence of any agreement to that effect, from negotiations or transactions with the insured, after knowledge of the forfeiture, by which the insurer recognizes the continued validity of the policy or does acts based thereon."

A full reading of the opinion in the Ellis Case will show that the facts in the instant case are much stronger in support of the waiver than in that case. The opinion in the Ellis Case is also a complete answer to appellant's further contention that its letter did not have the effect of waiving forfeiture of the policy because the insured never saw or read it and hence was not misled by it. That same contention in the Ellis Case was answered by pointing out that the controlling principle involved was one of waiver and not of estoppel and the conduct of the insured had nothing to do with it.

It is our conclusion that the trial court correctly instructed the verdict and entered judgment in favor of the plaintiffs for the principal amount sued for and statutory interest, and to that extent the judgment of the trial court will be affirmed.

However, the trial court erred in entering judgment for the 12 per cent. statutory penalty for the reason that the plaintiffs' pleadings did not warrant it. We conclude also that the trial court was in error in instructing judgment for $750 attorney's fees. That was an issue of fact which should have been sent to the jury. There-

fore, that part of the judgment of the trial court which awarded judgment for statutory penalty and for attorney's fee will be reversed and remanded for a new trial.

Affirmed in part, and in part reversed and remanded.