## HASSELL v. GREAT SOUTHERN LIFE INS. CO.

### No. 10322.

Court of Civil Appeals of Texas. Galveston.

Feb. 25, 1937.

Rehearing Denied March 18, 1937.

Chas. B. Spiner, of Houston, and Reginald Bracewell, of Huntsville, for appellant.

Vinson, Elkins, Weems & Francis, Fred R. Switzer, and Simon Frank, all of Houston, for appellee.

GRAVES, Justice.

The appellant sued the appellee in the court below as the designated beneficiary under a $1,000 life insurance policy issued by it on April 27 of 1929 upon the life of her husband, who died February 7 of 1934; during his lifetime the husband had paid in cash 2½ years' premiums, which kept the policy in force until October 27 of 1931; thereafter, and prior to his death as stated, being unable to pay any more premiums in cash, he issued and delivered "on account of" the premiums thereafter accruing, his two certain promissory notes, which are fully described in the trial court's findings, hereto appended;

The only question in the trial court, as well as the only one that is now here, was whether or not the execution and delivery of these two notes, in the circumstances, had the legal effect of keeping the insurance in force until the assured's death in February of 1934; the award below went against the appellant, which she complains of in this appeal, upon findings of fact and conclusions of law stated by the trial court in support of its judgment, the material ones of which are these:

"III. Under the terms of said policy said premiums were required to be paid in advance. The annual premium was the sum of $47.56. If the premium was paid semi-annually; the semi-annual premium was $24.74. The insured paid in cash all premiums due on said policy up to and including the semi-annual premium due and payable April 27, 1931. No further premiums were paid upon said policy.

"IV. On or about November 23, 1931, the insured executed and delivered to the insurer his certain note as follows:

" '$47.56 Policy No. 212234 11–23–1931.

" 'On or before the 1 day of Oct. 1932, without grace, I promise to pay to the order of Great Southern Life Insurance Company, at its office in Houston, Texas, the sum of Forty Seven and 56–100 Dollars with interest thereon until paid at the rate of six per cent per annum.

" 'This note is given on account of the premium due Oct. 27, 1931, on said Company's above numbered policy insuring my life, and if it shall not be paid in full at its maturity, all insurance under said policy shall cease and determine ipso facto and immediately, except as otherwise provided in the policy. In such event, this note shall cease to be binding, except for the pro rata amount of the premium unpaid and earned at the date of default, together with interest thereon; but for that amount and interest it shall remain a valid obligation.'

"That said note was given on account of annual premium due and payable on said policy in advance on the 27th day of October, 1931.

"V. That on or about September 30, 1932, there was paid on account of said note sufficient to pay the interest as provided in the said note to October 1, 1932, and the sum of $3.40, which was applied to the principal of said note, making the total due and unpaid on said note as of October 1, 1932, $44.16, and on or about September 30, 1932, the balance of said note of $44.16 was extended to mature April 27, 1933.

"VI. On or about September 30, 1932, the insured executed his note dated September 27, 1932, for the sum of $47.56, in words and figures substantially as follows, towit:
" '$47.56 Policy No. 212234 9/27/32

" 'On or before the 27 day of April, 1933, without grace, I promise to pay to the order of Great Southern Life Insurance Company, at its office in Houston, Texas, the sum of Forty-seven and 56/100 Dollars with interest thereon until paid at the rate of six per cent per annum.

" 'This note is given on account of the premium due 10–27–32, on said Company's above numbered policy insuring my life, and if it shall not be paid in full at its maturity, all insurance under said policy shall cease and determine ipso facto and immediately, except as otherwise provided in the policy. In such event, this note shall cease to be binding except for the pro-rata amount of the premium unpaid and earned at the date of default, together with interest thereon; but for the amount and interest it shall remain a valid obligation.'

"The said note was given on account of annual premium due and payable on said policy in advance on the 27th day of October 1932.

"VII. That on or about the 2nd day of May, 1933, the insurer wrote the insured a letter, stating therein it had extended said notes to mature May 12, 1933, without grace.

"VIII. That neither the insured, nor anyone for him, ever paid any sum on either of the two above described notes, except the interest and $3.40 on principal, as found in paragraph five above.

"IX. Neither of said notes were accepted by the insurance company in payment or discharge of the premium on account of which they were given, but the insured gave said notes and insurance company accepted the same as merely a means of extending the due date of the premium on account of which each note was given, such premium to become due and payable as extended, as provided in said notes. * * *

"XI. That said policy contained a provision:

" 'If any premium or any note or other obligation given therefor shall not be paid when due, this policy shall thereupon cease, except as herein provided.'

"That the term 'except as herein provided' refers to the grace period and the non-forfeiture provision of said policy.

"Conclusions of Law.

"I conclude as a matter of law that the plaintiff is entitled to recover nothing herein for the following reasons:

"I. Since the plaintiff had paid only 2½ years premium in cash on said policy at the date of default in payment of premium due October 27, 1931, the said policy had no paid-up insurance value, and had no loan or cash-surrender value, and therefore, the automatic premium-loan provision was not available to the insured.

"II. The above described notes represent the premium upon which they were given, but did not constitute payment of premium. The provisions in the policy and said notes, providing in effect that failure to pay such note or notes when due shall terminate all insurance under said policy, are valid enforceable provisions and, therefore, under the terms of the policy and the notes the insurance on the insured's life terminated before his death."

There should be added to the quoted fact-finding VII, the undisputed fact that the assured answered that letter of the insurer, calling to his attention that both the notes so extended to May 12 of 1933 were unpaid, with this writing on the reverse side thereof:

"Dear Sirs:

"Received your letter but sorry to say that I cannot pay interest on note or payment either as I havnt got it and cant get it. I some times wonder where my next meal is coming from and I do well as times are now with out having to pay insurance so I will just haft to drop it as I simply cant carry it any longer. I appreciate your effort to help but I just cant do any thing just now.

"Yours very truly,
"J. E. Hassell, Alief, Texas."

Through extended briefs and arguments on the appeal, the parties mutually reduce the controlling question—as stated supra—to the ultimate one of whether the two notes were intended to and did constitute payment of the premiums due, or were merely extensions of the maturity dates of the premiums, which the trial court determined in the appellee's favor under its quoted finding number IX; it relies upon that determination as being fully supported by the evidence and as compelling the appended conclusions of law, while the appellant as earnestly assails it, contending that the face of the notes themselves—together with the testimony of the only witness on the point, appellee's officer Kiker—conclusively settles the matter the other way.

This court thinks the trial court was correct, and affirms the judgment; it seems a far-flung construction to give the notes the transcendental effect appellant contends for, when both they—on the face thereof, after simply reciting they were given "on account of," not in lieu of, the premiums, bluntly declare all insurance shall cease, by that fact alone and immediately, if they are not paid in full at maturity—and the policy itself, to which they were subsidiary, reiterates that consequence by saying: "If any premium or any note or other obligation given therefor shall not be paid when due, this policy shall thereupon cease, except as herein provided"; especially when, further, the unfortunate insured man also, replying to the company's reminder that these two notes were unpaid—presumably about the

time they became due—in his quoted letter showed, with all-too-pitiful plainness, his own understanding that they had been given as extensions of the premium-due dates and not as actual payments of the premiums; whatever refinements of language and interpretation by way of aftermath are now indulged in, the hard fact the maker of these papers then knew so well—that they had not been intended to take the place of payments he was wholly unable to make—and so frankly stated, stands out still both from the reasonable implications of the writings and the construction the parties thereto put upon them in acting thereunder; this two-sided interpretation of why the notes were given and what niche in the contractual structure they really filled is thus completed on the appellee's side by these excerpts from the testimony of its Mr. Kiker, upon whom the appellant also relies for what she urges is in part support of her contrary position:

"Q. Then, summing up the transaction relating to both of these notes, you would say that the first note was given two and one-half years after the policy was in effect, to mature a year thereafter, approximately, and was then extended for some six months later, to April 27, 1933? A. That's right.

"Q. And the second note was given three and one-half years after the existence of the policy and making it mature six months later, and on the same day, April 27, 1933? A. Right.

"Q. That made both notes on the record extensions maturing April 27, 1933—is that correct? A. That's right.

"Q. Now, this last extension that you said the company gave, was that applicable to both notes or just one? A. It was applicable to both notes.

"Q. That was to what date? A. May 12, 1933.

"Q. And the assured died you know in February, 1934. A. Yes, sir."

Wherefore, the court's challenged finding No. IX was not without sufficient support in the evidence. 3 Tex.Jur. § 771, p. 1102.

Appellant, however, through her able counsel, notwithstanding these stated implications and mutual constructions by the immediate parties themselves the other way, still insists the notes constituted payment of the premiums due October 27 of 1931 and October 27 of 1932, respectively, the same as if they had been paid in cash, because of the provisos in both the notes and the policy to the effect that the insurance—on failure to pay the notes in full when due—would so ipso facto and immediately cease, "except as otherwise provided in the policy," which brought into operation for the benefit of the insured the "automatic premium-payment clause" of the policy, whereby the insurance company was obligated to itself pay the premiums due upon default of cash payment thereof on April 27 of 1933, out of the cash-value, or loan and surrender-value, then existing upon the policy involved; that is, the contract did not contemplate such ipso facto and immediate termination of the insurance in disregard of the nonforfeiture provision of the policy, inclusive of the automatic premium-payment, and loan or cash-surrender clause and schedules, detailed in the automatic premium-payment provision.

The vice in this plea in avoidance is, as the learned trial court held, that these provisional exceptions to the immediate visitation of a forfeiture for nonpayment were, by the express terms of the policy on the face thereof, only operative after payment for three full years of premiums had been made in cash.

Since, as just held, the notes cannot properly be considered as payment of the premiums they were given "on account of," the same as if they had been retired in cash, the contingency making the automatic-loan provision of the policy available to the insured had not occurred, hence this policy had no loan value whatever at the time these notes went into default, no three annual premiums having then been paid.

These authorities are thought to amply sustain the trial court's judgment, as well as the conclusions herein stated: Great Southern Life Ins. Co. v. Majors, 82 S.W. (2d) 760; Texas Life Ins. Co. v. Cork, 126 Tex. 627, 89 S.W.(2d) 779; Underwood v. Security Life & Annuity Co., 108 Tex. 381, 194 S.W. 585; Southwestern Life Ins. Co. v. Powers (Tex.Civ.App.) 100 S.W. (2d) 201.

Without further discussion, an affirmance will be entered.

Affirmed.