Opinion filed June 10, 2021



# In The

# Eleventh Court of Appeals

_____

## No. 11-19-00145-CV

_____

## CINTAS-R.U.S., L.P., Appellant

## V.

## DAVE'S TUBING TESTING AND HOT OIL SERVICE, INC., Appellee

**On Appeal from the 118th District Court**

**Howard County, Texas**

**Trial Court Cause No. 51081**

## M E M O R A N D U M   O P I N I O N

Cintas-R.U.S., L.P. appeals a judgment following a bench trial. Cintas sued Dave's Tubing Testing and Hot Oil Service, Inc. for breach of contract based on a contract to provide employee uniforms on a weekly basis. The trial court entered judgment in favor of Cintas for a portion of the damages that it sought to recover. In three issues on appeal, Cintas asserts that the trial court erred by (1) failing to

enforce the material terms of an unambiguous contract, (2) finding that Cintas materially breached the terms of the contract, thereby relieving Dave's of the obligation to pay liquidated damages, and (3) awarding only $2,500 in attorney's fees to Cintas. We affirm.

*Background Facts*

On April 9, 2014, Cintas and Dave's entered into a sixty-month contract for the rental of work uniforms for employees working for Dave's. The contract required Cintas to provide "the highest quality textile rental services at all times." Cintas provided uniforms under the contract, but Jimmy Wayne Hector, the owner of Dave's, testified that he experienced problems with uniform quality.

A Cintas service manager, Adrian Lopez, testified that, when a Cintas driver dropped off uniforms, the client could raise issues or complaints to the driver, and if the driver could not resolve the issue, then the client could call or e-mail with a complaint. Hector testified that he and his staff made numerous complaints to the delivery driver and also made attempts to call and complain about the service. Lopez testified that Cintas's call-log system did not show any complaints from Dave's about the quality of the uniforms.

Lopez testified that Cintas also provided a system to its customers whereby they could note problems with the uniforms on service tags, which were to be attached to the uniforms. Cintas did not keep a record of customer issues that were submitted on the service tags. Lopez did not know how many service tags were submitted by employees of Dave's. In that regard, Lopez was not the service manager over the account with Dave's. While Lopez sometimes made deliveries to Dave's, the primary delivery driver was "Ray," and he was no longer with Cintas.

Lopez testified that everything with the account was fine to his knowledge but that one day Cintas's driver arrived to deliver and pick up uniforms at Dave's and that uniforms from another uniform provider were there on site. Lopez further

testified that he was unaware of complaints about the fraying of shirts and uniforms. However, two employees of Dave's, Santiago J. Morales Jr. and E.C. Rodriguez, testified that they experienced problems with their uniforms and said that these problems remained unresolved in 2015. Morales testified that he filled out yellow service tags and attached them to his defective uniforms but that Appellant "never fixed [the uniforms]." Rodriguez testified that he did not personally fill out the tags because they needed to be in English, which was not his first language, but that Bobbie, another employee of Dave's, completed the tags for him. Rodriguez testified that he was supposed to have a total of thirteen uniforms but that six uniforms were never repaired or returned.

Lopez testified that Dave's stopped paying invoices and that Cintas terminated the account in December 2015. After the account was closed, Lopez had trouble reaching Dave's to recover uniforms. At the time that Cintas terminated the account, Dave's owed $6,413.35 in unpaid invoices and $6,772.17 in replacement costs for unreturned uniforms.

Cintas sued Dave's for breach of contract to recover $6,413.35 for unpaid invoices, $6,772.17 for damaged or unreturned merchandise, $37,842.58 in liquidated damages, and "no less than $10,000" in attorney's fees. Dave's countersued for breach of contract, raising the affirmative defense that Cintas committed a material breach first, thereby excusing Dave's from performance under the contract. The trial court awarded Cintas $6,413.35 for unpaid invoices, $6,772.17 for damaged or unreturned merchandise, and $2,500 for reasonable and necessary attorney's fees. This appeal followed.

*Analysis*

In its first issue, Cintas contends that the trial court erred in its interpretation of the contract. Cintas is essentially asserting that the trial court erred by finding that Cintas committed the initial material breach of the contract. Cintas bases this

contention on its interpretation of the contract. In Cintas's second issue, it contends that the trial court erred by relying on legally and factually insufficient evidence to find that Cintas committed a prior material breach. Because of the overlap of the two issues, we will consider them together.

Generally, when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance. *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017). Thus, a party's failure to comply with a contract is excused by the other party's previous failure to comply with a material obligation of the same agreement. *Id.* The trial court found that "[Cintas] breached the contract prior to [Dave's] breach of the contract, thereby excusing [Dave's] from future performance under the Contract." Cintas challenges this finding, along with other findings that support it.

When reviewing the sufficiency of the evidence to support the trial court's express or implied findings, we apply the same standards of review that we apply to a jury's verdict. *See MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009) (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)). Dave's had the burden of proof on its affirmative defense of prior material breach by Cintas. *See Henry v. Masson*, 333 S.W.3d 825, 834 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

When the appellant challenges the legal sufficiency of the evidence supporting an adverse finding on which it did not have the burden at trial, it must demonstrate that there is no evidence to support the adverse finding. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Under a legal sufficiency review, we consider all of the evidence in the light most favorable to the prevailing party, make every reasonable inference in that party's favor, and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller*, 168 S.W.3d at 807, 822, 827. We cannot

4

substitute our judgment for that of the factfinder if the evidence falls within the zone of reasonable disagreement. *Id.* at 822.

The evidence is legally insufficient to support a finding only if (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810. "Anything more than a scintilla of evidence is legally sufficient to support the finding." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). "More than a scintilla [of evidence] exists when the evidence would enable reasonable and fair-minded people to reach different conclusions." *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). "However, if the evidence is so weak that it only creates a mere surmise or suspicion of its existence, it is regarded as no evidence." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014).

The trial court entered the following findings of fact with respect to Cintas's performance under the contract:

> 5. Employees of [Dave's] would fill out repair slips and attach those slips to the uniforms that were picked up by [Cintas]. The repair slips included a list of problems and complaints by [Dave's] with the uniforms that were to be repaired or replaced by [Cintas].
>
> 6. Prior to September of 2015, employees of [Dave's] complained of the quality of the uniforms and the quality of service, said complaints being made in the normal course of business.
>
> 7. On more than one occasion prior to September of 2015, Jimmy Hector called [Cintas] and complained of the quality of the uniforms and the quality of service, said complaints being made in the normal course of business.

5

8. After being notified by [Dave's], [Cintas] failed to repair or service the uniforms within a reasonable period of time as required by the Contract.

9. [Cintas's] failure to properly provide quality uniforms and failure to properly maintain the uniforms constituted a breach of the Contract with [Dave's].

. . . .

12. Based upon [Cintas's] failure to provide quality uniforms and/or provide quality service concerning repairs to the uniforms, [Dave's] was justified in terminating the Contract for cause and justified in refusing to perform further under the Contract.

In presenting its legal sufficiency challenge, Cintas does not challenge the evidence supporting the trial court's finding that Cintas failed to provide quality uniforms and failed to properly maintain the uniforms. Instead, Cintas contends that, because the contract contained a "notice to cure" provision with which Dave's did not comply, the evidence is legally insufficient to support the trial court's findings and conclusions.

The notice provision appears in item no. 9 of the contract:

[Cintas] guarantees to deliver the highest quality textile rental service at all times. Any complaints about the quality of the service which have not been resolved in the normal course of business must be sent by registered letter to [Cintas's] General Manager.[1] If [Cintas] then fails to resolve any material complaint in a reasonable period of time, [Dave's] may terminate this agreement provided all rental items are paid for at the then current replacement values or returned to [Cintas] in good and usable condition.

Cintas asserts that this provision precludes a finding that Cintas materially breached first because Dave's never notified Cintas through a registered letter of any unresolved problems under the contract. Cintas contends that this provision served

---

[1] As noted at trial, the contract does not list the name of the general manager or the address to where Dave's was supposed to send the registered letter.

the purpose of notifying its upper management if there was a problem with Cintas's performance that its delivery drivers failed to communicate to upper management.

Cintas asserts that the notice provision was a required condition of the contract that Dave's had to meet before Cintas could be in material breach of the contract. The Dallas Court of Appeals addressed a similar contention in *Trammel v. Cintas Corp.*, No. 05-00-00047-CV, 2001 WL 301466, at \*3 (Tex. App.—Dallas, Mar. 29, 2001, no pet.) (not designated for publication). *Trammel* involved an almost identical notice provision. *Id.* In that case, Cintas asserted that the notice provision was a condition precedent to the customer's right to defend against Cintas's claims. *Id.* The court disagreed with Cintas's position in *Trammel* by holding that the provision did not prevent the customer from defending itself from Cintas's suit. *Id.* Thus, the customer was permitted to rely on evidence that Cintas "delivered dirty uniforms in the wrong sizes and colors" to raise a fact issue to defeat summary judgment. *Id.* at \*2.

We agree with the court's holding in *Trammel*. The notice provision does not foreclose a defendant from "asserting a counterclaim on defective performance or from defending [a] lawsuit." *See id.* at \*3. Furthermore, the notice provision does not set out the requirements for when a breach by Cintas will constitute a material breach. The contract provided that "[Cintas] guarantees to deliver the highest quality textile rental service at all times." This was a requirement placed upon Cintas when the contract was executed. The trial court essentially found that Cintas breached this obligation, that this breach constituted a material breach, and that this breach by Cintas occurred before the matters that Cintas contends were breaches by Dave's— including the failure to send notice by registered letter.

"A fundamental principle of contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform." *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691,

7

692 (Tex. 1994). A party to a contract may relinquish its contractual procedural rights by its prior material breach of the contract. *See Shintech Inc. v. Grp. Constructors, Inc.*, 688 S.W.2d 144, 151 (Tex. App.—Houston [14th Dist.] 1985, no writ) (determining that a breaching contractor was precluded from invoking a written notice requirement in the contract); *see also Port of Houston Auth. of Harris Cty. v. Zachry Constr. Corp.*, 513 S.W.3d 543, 564 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Thus, we conclude that the trial court's finding that Cintas materially breached the contract first is supported by legally sufficient evidence based upon the testimony that Cintas did not "deliver the highest quality textile rental service" prior to any breach of the contract by Dave's.

Cintas additionally asserts that it was entitled to liquidated damages as a matter of law under the terms of the liquidated damages clause. We disagree. A liquidated damages clause establishes the amount of damages, agreed to in advance, to which the non-breaching party is entitled to receive from the breaching party. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 664 (Tex. 2005); *Garden Ridge, L.P. v. Advance Int'l, Inc.*, 403 S.W.3d 432, 449 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (Frost, J., concurring) (noting that a liquidated damages clause is for the benefit of both the breaching and the non-breaching party); *see also* 24 WILLISTON ON CONTRACTS § 65:1 (4th ed.) (*Validity of provisions for liquidated damages, generally*). As set forth above, Cintas is not a non-breaching party and is therefore unable to rely on the liquidated damages clause to collect liquidated damages from Dave's.

Cintas also challenges the factual sufficiency of the evidence supporting the finding that it breached the contract first. If a party attacks the factual sufficiency of an adverse finding on an issue in which the other party had the burden of proof, the attacking party must demonstrate that there is insufficient evidence to support the adverse finding. *Croucher*, 660 S.W.2d at 58. In a factual sufficiency challenge,

8

we consider and weigh all of the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 407. We may not substitute our own judgment for that of the factfinder or pass upon the credibility of witnesses. *Id.* As discussed above, Dave's had the burden to prove its affirmative defense of prior material breach. Accordingly, Cintas must demonstrate that there is insufficient evidence to support the finding that it breached the agreement first. *See Croucher*, 660 S.W.2d at 58.

Hector testified that Dave's experienced problems with the uniforms for six to eight months prior to the termination of the contract by Cintas. Morales and Rodriguez testified that they experienced problems with their personal uniforms and that these problems remained unresolved in 2015. Hector also testified that multiple written notices were delivered to Cintas through the service tags that were attached to returned uniforms. Hector testified further that he and his staff made multiple attempts to call "[e]very week" and complain to Appellant but that their complaints about the uniforms remained unaddressed by Cintas. Hector also testified that Cintas failed to bring the proper uniforms because it sometimes left uniforms that belonged to employees from other companies. He also testified that, because of the nature of the work performed by the employees of Dave's in the oil field, the employees needed proper uniforms with fire retardant treatment that did not have holes. Because of defective uniforms, employees of Dave's experienced problems on jobsites for not having appropriate protective wear.

This evidence supports the trial court's finding that Cintas materially breached the contract by failing to deliver quality uniforms as required by the contract prior to a breach by Dave's. This finding was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Ellis*, 971 S.W.2d at 407. We

9

disagree with Cintas's contention that the real reason that Dave's decided to stop payment under the contract was that it found a better price from one of Cintas's competitors. The motivation of Dave's for canceling the contract was largely a matter of credibility, and we defer to the trial court's resolution of that credibility question. *See id.* We overrule Cintas's first and second issues.

In it's third issue, Cintas challenges the amount of the attorney's fees award. The trial court awarded Cintas $2,500 in reasonable and necessary attorney's fees. Appellant contends that, because its attorney's testimony on its attorney's fees was uncontested, it established the amount of its attorney's fees as a matter of law.

We review a trial court's award of attorney's fees for an abuse of discretion. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012). A trial court abuses that discretion if it acts arbitrarily, unreasonably, or without regard to guiding legal principles, or if its decision is not supported by legally or factually sufficient evidence. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *see also Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991) (explaining that legal and factual sufficiency of the evidence are relevant factors in determining whether trial court abused its discretion).

A prevailing party may recover reasonable attorney's fees for a breach of contract claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2015). "When a claimant wishes to obtain attorney's fees from the opposing party, the claimant must prove that the requested fees are both reasonable and necessary." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489 (Tex. 2019). "Both elements are questions of fact to be determined by the fact finder and act as limits on the amount of fees that a prevailing party can shift to the non-prevailing party." *Id.* When a party attacks the legal sufficiency of an adverse finding on an issue on which it had the burden of proof, it must demonstrate on

appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

Under Chapter 38, the trial court "may take judicial notice of the usual and customary attorney's fees and of the contents of the case file without receiving further evidence in . . . a proceeding before the court." CIV. PRAC. & REM. § 38.004. "It is presumed that the usual and customary attorney's fees for a claim of the type described in Section 38.001 are reasonable." *Id.* § 38.003; *see Rohrmoos Venture*, 578 S.W.3d at 490 n.9.

Ordinarily, the testimony of an interested witness, even when uncontradicted, merely raises an issue of fact, leaving the amount of the fees that should be awarded up to the factfinder, and a reviewing court may not substitute its judgment for that of the factfinder. *See Smith v. Patrick W.Y. Tam Tr.*, 296 S.W.3d 545, 547 (Tex. 2009) (citing *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990)). If, however, the testimony of an interested witness "is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon," the testimony "is taken as true, as a matter of law." *Ragsdale*, 801 S.W.2d at 882. Cintas relies on this concept to assert that it established the amount of its reasonable attorney's fees as a matter of law.

The trial court and the parties did not have the benefit of the Texas Supreme Court's opinion in *Rohrmoos Venture*. In *Rohrmoos Venture*, the court clarified the manner in which a lower court should determine an award of attorney's fees. 578 S.W.3d at 496. Texas uses the "lodestar method," which is essentially a "short hand version" of the *Arthur Andersen[2]* factors, to determine reasonable and necessary attorney's fees. *Id.* Under the lodestar method, the factfinder must first determine

---

[2]*Arthur Andersen & Co. v. Perry Equip. Corp.*, 94 S.W.2d 812, 818 (Tex. 1997).

11

the reasonable hours spent by counsel and the reasonable hourly rate for counsel's work. *El Apple I*, 370 S.W.3d at 760. The factfinder then multiplies the number of hours that counsel worked on the case by the applicable rate to determine the base fee or lodestar. *Id.* The base fee is presumed to reflect the reasonable and necessary attorney's fees. *Rohrmoos Venture*, 578 S.W.3d. at 499. The factfinder may adjust the lodestar up or down if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case. *Id.* at 500–01.

It is the fee claimant's burden to provide sufficient evidence of both the reasonable hours worked and the reasonable hourly rate. *Id.* at 498. "Sufficient evidence includes, *at a minimum*, evidence of (1) particular services performed, (2) who performed the services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each attorney performing the services." *Id.* (emphasis added).

"General, conclusory testimony devoid of any real substance will not support a fee award." *Id.* at 501. Generalities about tasks performed provide insufficient information for the factfinder to meaningfully review whether the tasks and hours were reasonable and necessary. *El Apple I*, 370 S.W.3d at 764. While contemporaneous billing records are not required, there must be some evidence to inform the trial court of the time spent on specific tasks to enable the factfinder to meaningfully review the requested fees. *Rohrmoos Venture*, 578 S.W.3d at 502; *Long v. Griffin*, 442 S.W.3d 253, 253, 255 (Tex. 2014) (per curiam); *City of Laredo v. Montano*, 414 S.W.3d 731, 736–37 (Tex. 2013) (per curiam) (reversing and remanding to redetermine attorney's fees when attorney testified to the time expended and the hourly rate but failed to provide evidence of the time devoted to specific tasks).

Cintas's trial counsel, Allen Russell, summarily testified that he worked a total of 33.9 hours on the case at a rate of $250 an hour, that an associate worked 4.3 hours at a rate of $200 an hour, and that paralegals worked 35.15 hours at a rate of $75 an hour. Russell requested "no less than $10,000" in reasonable and necessary attorney's fees for his work on the case. He testified that his opinion was "based upon a number of things, including the time, labor, novelty and difficulty of the questions involved and the skill requisite to perform the legal services." Russell also testified that he had his time records and his testimony in affidavit form. However, he did not offer his time records or an affidavit into evidence. Dave's did not cross-examine Russell and did not offer other evidence regarding the amount or reasonableness of the attorney's fees requested by Cintas. Thus, Russell's testimony on attorney's fees was uncontroverted.

Not every case involving uncontradicted testimony mandates an award for the amount claimed. *Ragsdale*, 801 S.W.2d at 882. "[E]ven though the evidence might be uncontradicted, if it is unreasonable, incredible, or its belief is questionable, then such evidence would only raise a fact issue to be determined by the trier of fact." *Id.* (opining on default judgment situations in which a trial judge "could find some of the claimed fees to be unreasonable, unwarranted, or some other circumstances which would make an award of the uncontroverted claim wrong").

Even though Dave's did not cross-examine or contradict Russell's testimony, we do not find that Cintas's attorney's fees were proven as a matter of law. Russell's testimony did not meet the standard articulated by the Texas Supreme Court in *Rohrmoos Venture*. Russell's testimony did not address the particular tasks that were performed or the amount of time needed to perform those tasks. *See Rohrmoos Venture*, 578 S.W.3d at 498.

Additionally, the Texas Supreme Court has also cautioned that a factfinder must consider "the amount [of money] involved and the results obtained." *Smith*,

296 S.W.3d at 548 (quoting *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)). Here, Cintas sought over $51,000 in damages, but the trial court awarded only $13,185.52 in damages to Cintas. The fact that the trial court only awarded roughly twenty-five percent of the damages sought provides some basis for the trial court's award of twenty-five percent of the attorney's fees sought by Cintas. The partial award of damages also indicates that the total amount of attorney's fees was not necessarily uncontroverted because Dave's contested the award of liquidated damages. *See Inwood N. Homeowners' Ass'n, Inc. v. Wilkes*, 813 S.W.2d 156, 158 (Tex. App.—Houston [14th Dist.] 1991, no writ).

Cintas did not establish the amount of its recoverable attorney's fees as a matter of law. Thus, the trial court did not abuse its discretion by failing to award all of the attorney's fees that Cintas sought. We overrule Cintas's third issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY
CHIEF JUSTICE

June 10, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.